IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JOHN ERIK STONE and
MILYNDA DESIRAE STONE,

                Plaintiffs,

v.                                           CIVIL ACTION NO.   3:19-0538

UNITED STATES OF AMERICA, through
its agency, HUNTINGTON VETERANS AFFAIRS
MEDICAL CENTER of the Department of the
Veterans Affairs,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

This suit arises out of the United States of America's pursuit of criminal charges against plaintiff John Erik Stone. Having not been convicted, Stone seeks damages for malicious prosecution and other claims pursuant to the Federal Tort Claims Act (FTCA). The United States moves to dismiss for lack of subject-matter jurisdiction. ECF No. 20. Because the FTCA exempts Stone's claims, the Court **GRANTS** the United States' motion.

**I. BACKGROUND**

Stone and his wife, co-plaintiff Milynda Desirae Stone, allege the following facts.[1] ECF No. 1. The United States Department of Veterans Affairs employed Stone at a VA Medical Center near Huntington, West Virginia. *Id.* ¶¶ 1, 3. Stone's co-worker, Ronnie Blankenship,[2] informed

---

[1] On January 2, 2020, the parties filed a stipulation purporting to amend the Complaint. ECF No. 16. The Court issued an order deeming the stipulation procedurally deficient but granting the parties leave to file an amended complaint. ECF No. 19. The parties never filed an amended complaint, so the original Complaint is still operative, and the Court relies on it here.

[2] Blankenship filed a separate suit based on the same underlying facts. *See* Civil Action No. 3:18-cv-01309.

Stone that he was going to take a discarded, inoperable meat slicer from a VA Medical Center dumpster. *Id.* ¶¶ 25, 30. Stone helped Blankenship load the meat slicer into Blankenship's truck. *Id.* ¶¶ 31–32. He claims the VA has no policy prohibiting the taking of abandoned items from dumpsters and that VA police officers do not have authority to arrest an employee for doing so. *Id.* ¶ 36.

After refurbishing the meat slicer, Blankenship asked Stone to sell it on Facebook. *Id.* ¶¶ 43, 45. Several months later, VA police officer Darrell Booth posed as a potential buyer and contacted Stone. *Id.* ¶¶ 47, 51. Stone told Booth to contact Blankenship to arrange the sale. *Id.* ¶ 48. At the sale, VA police officers Booth and Joseph Wayman arrested Blankenship. *Id.* ¶ 56. Upon questioning Blankenship, the officers learned of Stone's involvement with the meat slicer and decided sufficient grounds existed to press charges against him. *Id.* ¶¶ 57–58.

Booth and Wayman filed a criminal complaint against Stone with the Magistrate Court of Wayne County, West Virginia, for a violation of West Virginia Code § 61-11-06 (Punishment of Principals in the Second Degree and Accessories Before and After the Fact). *Id.* ¶¶ 59, 66. VA Medical Center Director Brian Nimmo allowed Stone's prosecution to continue. *Id.* ¶¶ 72–73. The Magistrate Court eventually dismissed Stone's felony charge upon motion by the state. *Id.* ¶ 81. About two months later, Wayman filed another criminal complaint against Stone for petit larceny. *Id.* ¶ 86. Stone later moved to dismiss the charge for failure to prosecute, and the Magistrate Court granted the motion and dismissed the charge. *Id.* ¶¶ 108–09.

Stone now alleges four counts against the United States for damages under state law pursuant to the FTCA: malicious prosecution, intentional infliction of emotional distress, defamation, and loss of consortium. *Id.* ¶¶ 112–152. The United States moves to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). ECF No. 20.

## II. LEGAL STANDARD

Under Rule 12(b)(1), a federal court must dismiss a claim if the court lacks subject-matter jurisdiction. A party can challenge subject-matter jurisdiction under Rule 12(b)(1) in two ways: "facial attacks" and "factual attacks." *Thigpen v. U.S.*, 800 F.2d 393, 401 n.15 (4th Cir. 1986), *rev'd on other grounds, Sheridan v. U.S.*, 487 U.S. 392 (1988). A "facial attack" argues the complaint's allegations are insufficient to sustain the court's jurisdiction. *Id*. If a party makes a "facial attack," the court must proceed as it would on a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Id.* The court accepts the complaint's allegations as true and does not consider materials outside the pleadings. *Id*. (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) and *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981)).

Alternatively, a "factual attack" challenges the truth of the complaint's allegations. *Id*. The court should "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams*, 697 F.2d at 1219 and *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir.1987)). The court should apply the summary judgment standard, under which "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id*. (citation omitted). Dismissal is only appropriate if "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id*. (citation omitted).

The United States does not explain its intended 12(b)(1) standard, and its Motion contains elements of both a facial and factual attack. Considered as a whole, the Motion is best treated as a factual attack. The United States argues key allegations are false, including Stone's assertions that

no policy prohibits VA employees from taking abandoned property and that VA police officers have no authority to arrest employees for removing discarded property. ECF No. 21, at 11 (citing ECF No. 1 ¶¶ 28, 36). To correct these allegations and argue a lack of subject-matter jurisdiction, the United States relies on significant extrinsic evidence, to which Stone responds with his own evidence. The parties thus ask the Court to move beyond the corners of the Complaint and gauge the sufficiency of their evidence. Therefore, the summary judgment standard applies, and dismissal is only appropriate if "the material jurisdictional facts are not in dispute" and the United States "is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R. Co.*, 945 F.2d at 768 (citation omitted).

### III. DISCUSSION

The Federal Tort Claims Act does not create a new cause of action. *Medina v. U.S.*, 259 F.3d 220, 223 (4th Cir. 2001). Rather, the statute waives sovereign immunity and "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." *Id.* (citing 28 U.S.C § 1346(b)). Section 2680, however, exempts certain categories of claims from the waiver. *See* 28 U.S.C. § 2680(a)–(n). The United States argues Stone's claims are exempted and therefore precluded by sovereign immunity. *See* ECF No. 21.

#### A. The FTCA bars Stone's defamation claim.

Count III of the Complaint is a defamation claim alleging the United States "communicated false, exaggerated, and defamatory statements about the Plaintiff to other Huntington VA employees and people in the community." ECF No. 1 ¶ 138. However, 28 U.S.C § 2680(h) bars any claim under the FTCA arising out of "libel, slander, [or] misrepresentation," which includes

defamation. *See Talbert v. U.S.*, 932 F.2d 1064, 1066 (4th Cir. 1991). Sovereign immunity therefore applies, and the Court dismisses Count III.

**B. The FTCA's discretionary function exception bars Stone's other claims.**

The United States also moves to dismiss Counts I, II, and IV based on the FTCA's discretionary function exception. *See* ECF No. 21. This exception excludes from the FTCA's waiver of sovereign immunity:

> [a]ny claim based upon an action or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a *discretionary function or duty* on the part of the federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a) (emphasis added). The plaintiff bears the burden of showing the discretionary function exception does not apply. *Welch v. U.S.*, 409 F.3d 646, 650–51 (4th Cir. 2005).

The Supreme Court established a two-part test to determine whether the exception bars a suit under the FTCA. *See U.S. v. Gaubert*, 499 U.S. 315 (1991); *Berkovitz v. U.S.*, 486 U.S. 531 (1988). First, the court must determine whether the conduct at issue was discretionary, involving "an element of judgment or choice." *Berkovitz*, 486 U.S. at 536. An act is not discretionary if a mandatory federal statute, regulation, or policy prescribes a specific course of action. *Baum v. U.S.*, 986 F.2d 716, 720 (4th Cir. 1993). When a mandatory directive exists, the discretionary function exception does not apply if the plaintiff can show the actor failed to adhere to the directive. *Id.* (citing *Berkovitz*, 486 U.S. at 536).

If an act is discretionary, the court proceeds to the second prong and determines whether the challenged conduct is "based on public policy considerations." *Berkovitz*, 486 U.S. at 531. The court focuses on "the nature of the actions taken and on whether they are susceptible to policy analysis," rather than "the agent's subjective intent in exercising the discretion." *Gaubert*, 499 U.S.

at 325. Importantly, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id*. at 324.

1. **The challenged conduct was discretionary.**

The United States begins its discussion of the test's first prong by challenging several allegations in the Complaint. ECF No. 21, at 11. Specifically, the United States challenges Stone's claims that no policy prohibits VA employees from taking abandoned property and that VA police officers have no authority to arrest employees for removing discarded property. *Id.* (citing ECF No. 1 ¶¶ 28, 36). To the contrary, the United States cites 38 C.F.R. § 1.218(a)(3), which prohibits "the willful destruction, damage, or removal of Government property or any part thereof [from VA facilities], without authorization . . . ." *Id.* at 12. The United States also claims a 2013 VA policy expressly prohibits the "theft, and/or removal of any VA property," including "equipment," "trash," and "contractor removed items." *Id.* at 14 (citing ECF No. 20-1, at 99).

As the United States explains, federal law grants VA police officers significant enforcement and arrest powers "with respect to acts occurring on [VA] property." *Id.* at 11 (citing 38 U.S.C. § 902); *see also* 38 C.F.R. § 2.6(a)(8) (providing that VA police officers have "the power to enforce Federal laws and [VA] regulations, to investigate violations of those laws and to arrest for crimes committed on [VA] property to the full extent provided by [VA] policies and procedures"). These powers include the ability to "conduct investigations, on and off [VA] property, of offenses that may have been committed on property under the original jurisdiction of [the VA], consistent with agreements or other consultation with affected Federal, State, or local law enforcement agencies." ECF No. 21, at 11 (citing 38 U.S.C. § 902(a)(1)(E)).

While VA police officers have authority to conduct investigations, the United States argues that no mandatory policy directs officers' actions during an investigation regarding stolen VA property. *Id.* at 12 (citing ECF No. 20-1, at 5 ¶ 17; ECF No. 20-2, at 5 ¶ 16). Thus, the United States argues, VA police officers exercise significant discretion when conducting investigations, and the discretionary function exception applies. *Id.* at 11; *see Pooler v. U.S.*, 787 F.2d 868, 870–71 (3d Cir. 1986) (affirming district court's holding that VA officials' choice of investigative techniques and determination to initiate criminal charges against the plaintiff were discretionary governmental functions), *abrogated on other grounds by Millbrook v. U.S.*, 569 U.S. 50 (2013).

In response, Stone first argues that VA police officers are required to investigate reported crimes. ECF No. 22, at 5–6. He cites VA Directive 0730, which states "[t]imely investigations of reported crimes and acts of misconduct will be performed by VA police officers," as well as 38 U.S.C. § 902(a)(1)(E), which provides "[VA] police officers shall, with respect to acts occurring on [VA] property . . . conduct investigations, on and off [VA] property, of offenses that may have been committed on property under the original jurisdiction of [the VA] . . . ." *Id.* Therefore, Stone argues, Booth and Wayman had no discretion in deciding whether to investigate the missing meat slicer. *Id.* at 6.

Even if Stone's interpretation is correct, it is inconsequential because Stone does not base his claims on Booth and Wayman initiating an investigation. Rather, his claims focus on the many discretionary judgments made by law enforcement during the investigation, principally the decision to file criminal charges against him. *See* ECF No. 1 ¶¶ 112–152. By necessity, Stone bases his malicious prosecution claim on his criminal prosecution, not Booth's and Wayman's initial investigation. *Id.* ¶¶ 112–127; *see Norfolk S. Ry. Co. v. Higginbotham*, 721 S.E.2d 541, 547 (W.Va. 2011) (explaining that investigation of a suspected crime without asserting control over a

criminal prosecution is insufficient for a malicious prosecution claim). And, his intentional infliction of emotional distress and loss of consortium claims are not limited to the launch of the investigation, but cover all of the defendant's conduct from May 2015 to October 2017, especially the filing of criminal charges. ECF No. 1 ¶¶ 129, 130, 132. The simple requirement that Booth and Wayman investigate the alleged theft of the meat slicer does not establish they lacked discretion in determining the methods, aims, and results of the investigation, which are the basis of Stone's challenge.

Stone next argues that Booth's and Wayman's off-property investigation required approval by the VA's Office of Security and Law Enforcement ("OS&LE"). ECF No. 22, at 6–7 (citing ECF No. 22-3, at 9). VA policy also required submission of a Uniform Offense Report to the OS&LE once the investigation ended. ECF No. 22-3, at 10. However, these general requirements are merely procedural safeguards to a mostly discretionary process. *See Miller v. U.S.*, 163 F.3d 591, 595 (9th Cir. 1998) (holding certain fire suppression standards and procedures did "not eliminate discretion because they do not tell firefighters how to fight the fire"). VA police officers must first exercise discretion in determining whether an incident meets the VA's criteria for off-campus investigations. *See* ECF No. 22-3, at 9; *French v. U.S.*, 195 F. Supp. 3d 947, 955 (N.D. Ohio 2016) (noting that a mandatory VA policy requiring employees to immediately report allegations of patient abuse "fails to bring the VA's alleged conduct out of the discretionary function exception" because, in part, the staff must determine whether the action is abuse). Officers must then exercise discretion in deciding how to conduct an investigation, a process on which the cited VA materials are mostly silent. *See also Pooler*, 787 F.2d at 870–71 (holding VA officials' investigative techniques and initiation of criminal charges were discretionary); *Coltharp v. U.S.*, 413 F. Supp. 3d 1182, 1189 (M.D. Ala. 2019) (holding VA staff members maintained discretion

in the enforcement of security policies). As the Fourth Circuit has observed, "[t]he existence of some mandatory language does not eliminate discretion when the broader goals sought to be achieved necessarily involve an element of discretion." *Holbrook v. U.S.*, 673 F.3d 341, 348 (4th Cir. 2012) (citation omitted). Here, too, the VA's approval and monitoring requirements do not void the significant degree of discretion Booth and Wayman exercised when investigating Stone and pursuing his conviction.

Stone also questions whether Booth and Wayman complied with the VA's requirement to obtain OS&LE approval (also called "902 authorization") for their off-property investigation. ECF No. 22, at 7. A violation of this mandatory regulation could subject the United States to liability. *See U.S. v. Gaubert*, 499 U.S. 315, 324 (1991) ("If the employee violates the mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy.") However, Booth stated in his declaration that he requested and received OS&LE approval prior to meeting Blankenship. ECF No. 20-1, at 5 ¶ 20. Wayman also declared to the best of his knowledge that Booth obtained the approval. ECF No. 20-2, at 5 ¶ 19. Because the United States met its initial evidentiary burden, Stone must produce sufficient evidence in the form of depositions, affidavits, or other documentation that demonstrates a triable issue of fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Stone's only support, however, is his observation that an Investigative Report filed by Wayman and an Investigative Supplement prepared by Booth do not explicitly state the OS&LE approved their investigation. ECF No. 22, at 7; ECF Nos. 22-2, 22-4. Yet, Stone provides no reason to assume these documents would indicate OS&LE approval if granted, so the evidence is not probative. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (holding summary judgment is appropriate if evidence is not

significantly probative). His lack of evidence fails to create a triable issue of fact regarding OS&LE approval of the investigation.

In sum, the United States offered substantial evidence that federal law and VA policies afforded Booth, Wayman, and Nimmo significant discretion in determining the methods and aims of Stone's investigation and prosecution. Stone did not meet his burden of showing the officers' conduct was not discretionary, and he failed to offer counter evidence showing a triable issue of fact. *See Welch*, 409 F.3d at 650–51. The Court therefore finds the first prong of the discretionary function exception is met.

### 2. The challenged conduct was based on policy considerations.

Because the Court concluded the challenged conduct was discretionary, the Court presumes the conduct was also grounded in policy. *See Gaubert*, 499 U.S. at 324. Stone does not contest this presumption nor could he successfully. Courts have consistently found the exercise of government entities' statutory power to investigate criminal activity and arrest suspects is grounded in public policy. *E.g.*, *Linder v. U.S.*, 937 F.3d 1087, 1091 (7th Cir. 2019) ("[C]riminal investigation and prosecution are rife with legitimate discretion, and [] how discretion is exercised rests on potentially contestable visions of wise policy."); *Blakey v. U.S.S. Iowa*, 991 F.2d 148, 153 (4th Cir. 1993) ("The course that a military investigation takes remains a choice of the officials in charge and implicates policy considerations, making it subject to the discretionary function exception."); *Kelly v. U.S.*, 924 F.2d 355, 362 (1st Cir. 1992) (holding "decisions to investigate, or not, are at the core of law enforcement activity" and are "precisely the kind of policy-rooted decisionmaking that section 2680(a) was designed to safeguard"); *French v. U.S.*, 195 F. Supp. 3d 947, 955 (N.D. Ohio 2016) (holding VA's delay in investigating alleged abuse by a chaplain was a judgment concerning matters of policy); *Reeves v. U.S. Dep't of Treasury*, 809 F. Supp. 92, 95

(N.D. Ga. 1992) (holding ATF special agent's handling of investigation required policy judgments protected by the discretionary function exception). The Court therefore easily finds the investigation and pursuit of criminal charges against Stone required policy-based judgments covered by the discretionary function exception. The second prong is met. The discretionary function exception applies and exempts Counts I, II, and IV from the FTCA.

## IV. CONCLUSION

For the foregoing reasons, Stone's claims are exempted from the FTCA and precluded by sovereign immunity. Accordingly, the Court **GRANTS** the United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction, ECF No. 20, and **DISMISSES** this case with prejudice. The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER: April 9, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE